The third case in which we'll hear oral argument this morning is number 06-3124, Cheney v. Department of Justice. Mr. Spitzer, I see that you've reserved five minutes for rebuttal, is that correct? That's my aspiration, Your Honor. Okay. You can start whenever you're ready. Before we start, don't start the clock yet, I'm just curious, Mr. Spitzer, the ACLU is representing Mr. Cheney in this case? Yes, sir. I'm just, and that's fine, I'm not having any objection or, I'm just interested, does the ACLU regularly come in and will represent someone in a case like this on a basis? Your Honor, we're not often in this court. This is my first time arguing in this court. But we do, especially here in the Washington, D.C. chapter of the ACLU, get involved in a fair number of cases involving the rights of government employees, free speech rights, due process rights. Okay. All right. That's all. I just wanted to make sure I understood that. Okay. Go ahead. May it please the Court, the decision of the Merit System Protection Board below, the rationale of that decision, is really contained in just two paragraphs of the Board's decision, which are in the joint appendix of pages 9 and 10. Under the heading analysis on page 9, the administrative judge begins by correctly stating, in King v. Alston, the United States Court of Appeals for the Federal Circuit stated that before placing an employee on enforced leave, merely providing the employee with information that his access to classified information is being suspended, without more, does not provide the employee with sufficient information to make an informed reply. Mr. Spitzer, what is the bare minimum that's required? What would be required? The minimum that's required, as this Court held in King and as the administrative judge recognized, is sufficient information to make an informed reply. And that's the interpretation of the Civil Service Reform Act. The Civil Service Reform Act requires a notice stating the specific reasons, and this Court held in Brooke v. Corrado, and then further in King v. Alston, that a notice is sufficient when it apprises the employee of the nature of the charges in sufficient detail to allow the employee to make an informed reply. That's a quote from Brooke, later quoted in King v. Alston. Well, in King v. Alston, the issue was the medical condition of the employee. Yes, sir. That's all he was told. The amount of words told in King v. Alston were small, but this Court recognized that that was enough in that case for Mr. Alston to be able to make an informed reply, because he obviously knew, the record makes it clear that he knew and he acknowledged that he knew what the medical condition was that it was at issue. Let me suggest an analogy to Your Honor. If a federal employee were arrested and charged with bank robbery on Monday, released on bail on Tuesday, and showed up at the workplace on Wednesday, and the employer said to him, we're putting you on leave without pay, and the reason is we have reason to believe that you committed a felony, he would know enough to make an informed reply. If he said to the employer, what felony are you talking about? We would laugh at him. On the other hand, if the same Wednesday afternoon the employer calls in another employee who's never been arrested or charged with any crime in his life, and says to the second employee, we're putting you on suspension, leave without pay, because we have reason to believe you committed a felony, and the employee said, what are you talking about? What crime do you think I committed, and when and where? We wouldn't laugh at him. We would say he's entitled to sufficient notice so that he can respond in an intelligent way to the charges, and in that case, he hasn't been given it. What about the allegations that Mr. Cheney inappropriately queried or caused to be queried law enforcement database? Is that sufficient? It's not sufficient. What is wrong with that? As Mr. Cheney pointed out to the board below, he has queried or caused to be queried those databases thousands of times in his 18-year career as a special agent. This is a daily occurrence. Run a check on this license plate of this car that I just observed with tinted windows driving in a drug neighborhood. It's a daily occurrence. So what query do they think was improper? According to your theory, they would have to define the impropriety of the use. I think they would have to give him some information that would enable him to respond. Was it a query in July? Was it a query in March? Was it a query about this particular person? Was it a query about that particular telephone number or license plate number? Something so that he could say, oh, now I understand why you're concerned, and here's why I made or caused to be made that query. The other thing he pointed out in response to that particular information was, as a supervisor, as the resident agent in charge, he didn't sit at the computer keyboard and make these queries. He didn't even have a password. He would say to one of his many subordinates, run a check on this person, run a check on this telephone number, run a query on this license plate, and someone else would do it. So someone else, as far as we know, someone else made the actual query. Maybe they misunderstood his directions. Maybe somebody thought he was making an incorrect request, but in fact he had a good reason. How can he explain that to the agency so that the agency can then make an informed and fair decision if the agency won't let him know the evidence with which he's being accused? And simply saying, we think you made inappropriate queries to the database, tells you nothing more than if someone said to me, you know, I think you once broke a rule of the ACLU. Well, what rule do you think I broke, and when and where? Would you consider that less specific than the medical condition notice? In the abstract, Your Honor, out of context, I think one would have to say no, it's not less specific. But meaning always depends upon context. There is no meaning without context. The context of Mr. Alston's case is that he plainly knew, and this Court relied upon that, he plainly knew what his medical condition was. He submitted medical documentation to the agency. Either this Court's opinion or the opinion of the board below points out that he and his lawyer negotiated with the agency about the possibility of a medical leave. They had an interaction. They knew what was on the table. And in fact, he didn't make an issue of it. The board points out, and this Court acknowledges in its opinion, that Mr. Alston did not claim that he didn't have enough information. That wasn't his claim. Well, if hypothetically Mr. Cheney had asked for information regarding his ex-wife by using the database, and he knew about it, wouldn't that be sufficient? How do we know that's what the agency was concerned about? No, hypothetically, would that be sufficient? If he knew that he had asked for information on a person that might not necessarily be required? Well, I think the answer is no, not enough. You'd have to add at least one other fact to that, which is some reason to believe that that's the alleged misuse that the agency had a problem with. Perhaps, hypothetically, he knew that he had misused the database in this particular occasion. How does he know that's the misuse the agency is aware of and is worried about? It might or might not be. So it seems to me that even in that hypothetical, that's not enough. And, of course, there's absolutely nothing in this record to suggest that Mr. Cheney knows of any particular misuse. Let's assume, remaining in hypothetical land, that he had once queried the database about his ex-wife. Perhaps he had a perfectly valid reason to do that. I don't think there's anything that says you can't do that if you have a valid reason, just because someone is a relative. But wouldn't he know whether or not he misused the process by sufficiently with the agency alleging that he had misused it? Well, that surely, I think the answer is, assuming that he, to assume that he knew he misused it, it really shifts the burden of proof completely here and the burden of notification from the agency to the individual. It's like saying to a criminal defendant, we think you committed a crime. You must know whether you committed a crime. And if you know, then there's no need for the indictment to tell you the details of the time, place, and nature of the crime. Why don't you just confess and get it over with? That's not our system. This is not an indictment or an information cop. No, but you're depriving an 18-year federal employee of his livelihood. And the standard is clearly on the agency, by statute and by the due process clause of the Constitution, to give him due process. And due process means that the government must not assume that he's guilty and knows what he's guilty of, and that's the end of that. Why do we need a hearing or a trial? The government must notify him of the charges or the allegations in a sufficiently specific way that he can make an informed response and then give him an opportunity to respond. Mr. Spitzer, let me ask you this to bring us within the framework of our jurisprudence on Egan. I read you, I think it was in the reply brief, to be saying, look, if Mr. Cheney had been given the information that you say he should have been given to defend himself, and if the agency had said, sorry, we don't believe you, we think you did abuse the database and you did engage in improper personal conduct, I guess that's the other charge, on such and such a date you did this, and they took away the security clearance, you would agree that under that circumstance he would not have the right to challenge that determination. And you would say neither could he challenge the determination of the agency that these things are pertinent to having a security clearance. I think that's right. You're just saying here the agency gave him limited procedural rights within the agency, solely within the agency, and he wasn't given what he needed to exercise those limited rights. That's exactly right, Your Honor, but it's a crucial distinction. It's clear under Egan that neither the board nor this court nor any court can second-guess the agency's determination on the merits of a security clearance, a grant or a revocation or a suspension. But Egan itself made clear, and this court acknowledged that in Alston, that such an employee, an employee with a security clearance, retains certain procedural protections, and that the Merit System Protection Board and this court sits to enforce those procedural protections. The court talks in Egan at page 526 when it says, May the board examine the merits of the security clearance denial, or does its authority stop short at that point, that is, upon review of the fact of denial, the position's requirement of a clearance, and the satisfactory provision of the requisite procedural protections, the satisfactory provision. And then later on page 533, it talks about how in Mr. Egan's case, he received a notice of the reasons, an opportunity to inspect all the relevant evidence, a right to respond, a written decision and an appeal. His removal was subject to board review that provided the important protections outlined above. And King v. Alston confirms that Egan did not eject the courts from protecting the procedural rights, including the right to sufficient notice and the right to respond to that notice as sufficient. Mr. Spitzer, you're into your rebuttal. I'm sorry? No, you had some questions. So we'll give you your full five minutes of rebuttal, and we'll give the government an additional two minutes. Thank you very much, Your Honor. That should make it equal. Ms. Kidd-Miller? As I said, you have 17 minutes if you need it, because we're going to give Mr. Spitzer will, in effect, have an additional two minutes. So go ahead. Thank you, Your Honor. May it please the Court, the Merit Systems Protection Board and, in turn, this Court are limited to determining three things in this case. First, whether Mr. Cheney's position required a security clearance. Well, Ms. Kidd-Miller, one of the things, really, that's bothering me about this case is what is the minimum notice that's required under the statute, under our case law? The minimum notice that is required as to the adverse action, in Mr. Cheney's case, the indefinite suspension, is specific notice of the reasons for that indefinite suspension. In this case, the minimum notice, then, would be Mr. Cheney, you no longer possess the required security clearance. That's all? Yes, Your Honor. You just don't have the security clearance, so we're going to just throw you up. Period. We don't have to tell him why we're lifting the security clearance, at least minimum? That's correct, Your Honor. Isn't that required under King case? Your Honor, King does seem to suggest that King and the Board decisions following King have perhaps created some confusion in this area of the law. When King is read in conjunction with the Supreme Court's decision in Egan, and in conjunction with this Court's decision in Hess, it is clear that the Board and this Court do not have within their purview either the merits or the procedures used in the revocation or suspension of a security clearance. Those are questions left solely to the discretion of the executive. What Mr. Cheney is entitled to, pursuant to due process, are the procedures provided by 5 U.S.C. 7513B, and those procedures are with respect to his indefinite suspension. But then, Ms. Kivlin, how do you, I mean, again, getting back to King v. Salston, it says down at the bottom of page 661, that such notice provides the employee with an adequate opportunity to make a meaningful reply to the agency before being placed on enforced leave. This is at, I guess, 75-3-661 going on to 662. In other words, it would say at the bottom of 661, entitles employee to notice of the reasons for the suspension of his access to classified information, when that is the reason for placing the employee on enforced leave pending a decision. And then it says, such notice gives him adequate opportunity to make a meaningful response. The, I mean, it certainly seems to say that, in other words, if someone has a security clearance, okay, and say, for example, they're told, we're taking away your security clearance because you committed a felony. Okay? Is that enough? Yes, Your Honor. How? They can't respond. I mean, how would you want to be in that position? You have a security clearance, okay? I don't know if you do or not. It's none of my business. But assume you have a security clearance, and assume the agency procedures give you the right, when you're told that they're going to take your security clearance away, they have to tell you the reasons and give you a chance to respond. Okay? And if you're just told you committed a felony, without being told when or where, how does that give you a chance to respond? It doesn't, does it? If I understand your question correctly, you're asking, does it give you a chance to respond to the adverse action? No, to take away the security clearance. They're going to take away your security, they say, we're going to take away your security clearance because you've committed a felony. And you go in and say, well, what felony did I commit and when did I commit it? You have to tell me that, otherwise I won't be able to respond. And they say, no, we're not going to tell you. Where does that leave you? Well, the employee does not have either a liberty or property interest in the security clearance itself. Oh, there's no question about that. But where the, as I read Alston and some of these other cases, where the agency says, there's no question that if they tell you, you robbed a bank on March the 4th, and you come in and say, no, I didn't, I was on vacation, and it turns out they disbelieve you, and they take away your security clearance and you lose a job. There's no question. You cannot challenge that before the board and you can't say anything about it. That's the end of it. But if they set up a procedure whereby they say, we will tell you if we're going to take away your security clearance and we'll give you the reasons and a chance to respond, that's all. I'm talking about the process. I mean, how do you have any way to meaningfully respond if they say, you've been charged with a felony, but we're not going to tell you when you committed it or what the felony was? Well, Your Honor, you may not have a meaningful opportunity to respond to that proposed security clearance. And isn't that, though, what Alston says you have to have? Do you think Alston was wrongly decided? Respectfully, yes, Your Honor. So in other words, if we're bound by Alston, do you lose the case? No, Your Honor. Why? I mean, it's a fair argument to say that Alston is wrong and that if Alston controls, you lose. But do you think that if Alston controls, you win? Yes, Your Honor. Why? Alston must be read in connection with Hess and Egan. Now, to the extent that this Court were to look at the sufficiency of the notice that Mr. Cheney received, that being the notice with respect to his proposed security clearance determination, which respectfully we suggest is beyond the purview of this Court, Mr. Cheney did receive several reasons from the DEA to explain why his security clearance was being suspended. You're absolutely right. They did tell him the reasons. But again, it's like saying you committed a felony. They are admittedly vague, Your Honor. They didn't give him information. And Alston is the earlier case, so it controls over Hess, assuming there was an inconsistency. I mean, if you want us to revisit Alston, that's one thing. But I have a difficult, I mean, it seems to me that if, where I am on the case is, if Alston is good law and we have to follow it because it is our precedent, at least for me, and I can't speak for my colleagues on the panel, it seems that there's a good argument for the proposition that Mr. Cheney wasn't given what he needed. I don't see how he could defend himself with what he was told. Your Honor, the examples that we do have of cases applying Alston where either, although the ones that are coming to mind right now are board decisions, where the employee was found to have not received due process, in those examples the employee received absolutely no reasons whatsoever. Those are the only examples that we have of a time when an employee has not received due process under the King v. Alston framework. Well, of the seven reasons that it was given, what would you consider to be the most specific to support the Alston rationale? Personally, I would consider the database inquiries to have been the most specific. But all he was told was that you misused the database, period. Yes, Your Honor. Isn't there a little bit more that's required? No, Your Honor. Respectfully, the agency could have... Alston, let's go back, let's not beat a dead horse, but there's very, very strong language in there saying the second section that Judge Schall did not get to, it says merely providing the employee with information that has access to classified information is being suspended. Without more, does not provide the employee with sufficient information, make an informed reply to the agency before being placed on enforced leave. How does that allegation of misuse of the database comply with that? We have in the record several examples of responses that Mr. Cheney was able to formulate. The question of the sufficiency of that notice, and the types of examples that Mr. Cheney's representative has given here today of the types of things that Mr. Cheney would have needed to know from the DEA, demonstrate the very reason why an employee does not need to be told more than Mr. Cheney was. But why couldn't they just tell him, you misused the database four times during the month of April 2002? Okay. Now, that would give him some specificity. But again, he's been an employee for 18 years. How can he respond if he hasn't been told when he did it? I mean, it's just very difficult. There's something in the sense of fairness that recoils a little bit here about not being told when he did something he wasn't supposed to do. Agreed. If he had been told that and he went in and they didn't believe him, that would be the end of it. But they say he has certain procedures here, and it seems hard, at least for me, and I can only speak for myself, to see how he was given enough information to answer the charges. What interests are you protecting that would override the concern that you might have to give him the information that he needs to properly respond? Your Honor, in these cases a whole slew of government interests are implicated. So if you told him these are the four days in April that you did this, those interests would be compromised? It is a possibility, yes, Your Honor. This was an ongoing investigation. That information, and I'm speaking hypothetically here, could have revealed details that would have compromised the further investigation. As to the general fairness point, the executive order that exists in this agency and was enacted in the agency's discretion setting forth the procedures that the executive has determined that employees are entitled to in this area would give Mr. Cheney the type of notice that he's requesting at the point when his security clearance is revoked, if that occurs. Where does this sit now? What has happened here now? Your Honor, I have been informed by Mr. Cheney's counsel that Mr. Cheney has received a proposed notice of removal. I haven't seen it. I don't know precisely what the status is regarding the security clearance or his position. Unless the court has any further questions, we ask that you affirm the decision of the Merit Systems Protection Board in this case. Mr. Spitzer? Thank you, Ms. Kidmiller. Thank you, Your Honor. I think it's fair to say, responding to the question addressed to Ms. Miller about what cases try to flesh out these requirements, that there is no case. She's cited none and I've found none in which an adverse action has been upheld on notice that was equivalent to or less than what was here. The closest example by far is Alston, as Judge Garza and I were talking about earlier, which on its face appears to be a similarly slipshod kind of a notice. But in that case, Mr. Alston knew. I think Ms. Kidmiller would say that Alston is out of sync. I don't want to put words in her mouth, but I think she would say that Alston is out of sync with Egan. Well, OPM said that. Alston was here on an appeal by the Office of Personnel Management and their principal argument in Alston was that Egan completely ejected the Merit System Protection Board from any involvement in these cases, that indeed their submission was precisely that all the agency had to say to the employee was your position requires a clearance, your clearance has been suspended, you have 30 days to tell us why one of those propositions is false. But there are some board decisions that go that far. They're not binding on us, but there are some board decisions at least. I don't think there are any in the wake of King v. Alston, Your Honor. I don't think so. Not that I remember reading, and not that I recited in the briefs as far as I know. What Ms. Miller's brief argues, I think, these are not her words, but I think the government suggests here that in the wake of King v. Alston, we have a regime that one might characterize as notice light. Instead of the real notice required by the Civil Service Reform Act, when you're in the security clearance world, all you have to give is sort of a vague idea of what the allegations are sort of about, and that's all the notice you need. And where that comes from is the fact that in Alston the allegation was fairly vague. But there's nothing in Alston or in Hess or in the Merit System Protection Board cases as I read them to suggest that that's true. The question is very simple under the statute, was whether the notice was sufficient to enable the employee to make an informed response, and that can only be judged on a case-by-case basis. In that case, did the employee have enough? In Hess, the State Department employee there was given, according to this court, at the very end of its opinion, it says, the agency gave Mr. Hess considerable information about the incidents that led it to conclude he was a poor security risk. The agency provided Mr. Hess with ample information about why it took the action it did. It didn't tell us in the opinion. But there's no indications of what that information was. There's none, but except that it seems to me it would be hard to read the phrase considerable information about the incidents to mean something comparable to what happened here. Mr. Cheney did not get considerable information about the incidents. He got generalized phrases about violating rules, but he really got no information. Even in the security clearance proceeding itself, we're not in one here, of course, but under Executive Order 12968, which governs security clearances, when an agency proposes to revoke a clearance, in Section 5.2 paren 1 of the Executive Order, it says that the employee shall be provided as comprehensive and detailed a written explanation of the basis for that conclusion as the national security interests of the United States and other applicable law permit. Comprehensive and detailed. Now, I agree, and I acknowledged in my brief there could be a case in which the agency would say the interests of national security preclude us from telling you in any more detail what the allegations are. But surely there would have to be some burden on the agency to articulate that, at least, even if they don't have to explain it in classified declarations to the court. And certainly the United States knows how. Certainly I've seen this in a lot of my cases. The United States knows how to submit a classified declaration to a court when it needs to, explaining to the court why something can't be placed on the public record or why some employee can't be informed of some detail. Mr. Spitzer, let me ask you. And they didn't do that here. Excuse me. If we agree with the board in this case, obviously you lose the case. It's over. If we agree with you that Mr. Cheney did not receive the procedural protections to which you claim he was entitled, what does one do with the case? I think simply a reversal and a remand for remedy would be appropriate. I point out in my brief that I think what we have here is a violation of the Chenery rule. The administrative judge, the merit board, decided this case on grounds that the government... Well, I was going to say the government doesn't defend here. I think the government didn't defend those grounds until this oral argument. That is, the administrative judge said the agency told him his clearance has been suspended and that's all they had to do. And in their brief, the agency admitted that that was not good enough. Well, in that case, I think this court could not uphold on alternative grounds, ordinarily would have to remand, but there's no need for a remand... For what? Right, there's no need for a remand where the agency couldn't come out the other way. And so I think there is no need for a remand on the merits. I think the decision should be reversed and with an order that Mr. Cheney should be placed back where he would have been on January 14, 2002. But he doesn't have his security clearance. He can't go back to work. This court can't put him back on the job. The agency, since it didn't give him proper notice, should have maintained him on leave with pay until such point as it gave him his procedural protections. It seems to me the proper remedy is back pay and that his status should be leave with pay until such time as the agency gives him proper notice. Now, as Ms. Kidmiller mentioned, he has recently received a notice of proposed removal, much more detailed than what he got here, and so I think his back pay probably would be cut off at that point. Thank you, Mr. Spitzer. I'm going to do one thing that's a little bit different than what we usually do here. Ms. Kidmiller, you had some additional time and I wanted to give you a chance to respond to the question about a remedy here, if you could. In other words, obviously if we affirm, that's the end of the case. But a possibility is that we disagree, and I asked Mr. Spitzer what the result would be here if we disagreed with the board. In other words, if one felt that the procedural protections weren't afforded. In that case, I wanted to give you a chance, though, to speak as to what you felt would be the remedy. Plus, you still had additional time left anyway. Thank you, Your Honor. I didn't want it to be just one-sided in that regard. If, of course, as you stated, if this court were to agree with the board, the case is finished. If this court were to decide that the board's analysis was flawed, then I believe that the proper recourse would be to remand to the board to conduct a new analysis, and to perhaps take additional evidence. I don't know whether that would be necessary, but certainly that would be within the board's purview as well. But you would remand it to the board. I'm not sure that, well, Mr. Cheney could not be ordered back pay by this court. That is clear. You say he couldn't? He could not. Why not if he was improperly suspended without pay because he didn't get the protections? Wouldn't he be entitled for that limited period for back pay? Admittedly, Your Honor, we're getting into an area that I'm less familiar with. Fair enough. I understand. I understand. Could they correct the notice provision now retroactively? I suppose they could. Doing so would be requiring them to give the type of notice that is not required under the executive order, that the agency that the President indeed has determined is necessary in this case. So it would be an unusual situation. I'm frankly not sure exactly how the details of that would work. To correct the procedural error? Yes, Your Honor. So you couldn't do it retroactively. You'd have to basically, if we said that the notice that he was provided was insufficient, as of the time that it was issued, so the new notice would go out with more specificity. The time period between his original suspension and his present suspension would still have to be compensated. Would it not? If there was procedural error? I don't know, Your Honor. Fair enough. Thank you, Ms. Kenner. Obviously, that's a question that wasn't on the plate, but I did just want to give you a chance to respond to that. Mr. Spitzer, thank you. Ms. Kidmiller, thank you. The case is submitted.